City, No. 15-3166. Good morning. May it please me, Your Honors, my name is Russell McKeelan. I am counsel to the appellants in this matter. Before I proceed, I'd like to request three minutes and a quarter to go. That would be granted. Thank you. Your Honors, this is an action seeking to invalidate an ordinance that's maintained by the City of Jersey City at Chapter 304, Article 7, entitled Construction Project Labor Agreements. The ordinance requires construction contractors like the appellants when they're working on private construction projects to execute a form of a collective bargaining agreement that's known as a project labor agreement. And they have to do that when the developer of the project has applied for and been granted a tax abatement according to New Jersey's long-term tax exemption law and according to a Jersey City ordinance. This is not an attack on urban redevelopment. It is not an attack on tax abatements in general. It is an attack only on the connection between the tax abatement and the project labor agreement. Could I ask a question? Tell me what the injury is. I understand your position is that this ordinance is an obstacle to bidding and it has a deterrent effect, but tell me why that's the case. I just wasn't... It's the case, Judge, because those who are marriage shop contractors who don't necessarily have union relationships are very reluctant to enter the world where they are mixing their workforces with unionized workforces from the hiring halls that are required under a project labor agreement. They also are unfamiliar with the work rules that are maintained under the Schedule A collective bargaining agreements. Those are the collective bargaining agreements of the various trades that do the work on a construction project, all of which are woven together by a project labor agreement. Each of those CBAs, if you will, collective bargaining agreements, has work rules, has economics that a non-union contractor is unfamiliar with. And frankly, if they intend to stay non-union, which is their right, they don't necessarily want to mix their non-union workers with those who are coming from the union's hiring halls, which is required. Okay. Thank you. You're making now a more practical argument. I understood your argument fundamentally to be that this implicated Section 7 of the NLRA itself, which includes not only a right to organize, but to refrain from doing so. Judge Krause, you're spot on. That is correct. I was just answering Judge Sirica's question, but you're right. The essence of this is that we believe that it is preempted by both government and machinist preemption. And we think that because we think that Jersey City is not a market participant, as the district court found them, but instead is clearly a market participant for several reasons. First and foremost, there is U.S. Supreme Court precedent in the Camps-Newfound case establishing that a tax abatement in and of itself is not market participation. Now, that's a German Commerce Clause case, but this court has found it to be consistent with its NLRA jurisprudence in the Tri-End Group case, I believe in 2008. Secondly, there are enough facts on the record establishing that Jersey City, whether it's the very long and regulatory process by which a developer has to seek a tax abatement, or it's the tools of compliance that Jersey City has at its disposal, which are in ordinance and also in the long-term tax exemption law. These are tools of compliance that are enforced mostly by the city's tax collector and its corporation council. And clearly in the case law, we believe that that establishes Jersey City as a regulator. Let's take a look at that proprietary interest, because in both Chamber of Commerce v. Brown and Tri-End Group, one of the things we looked at was the nature of the penalty as something that could make it more regulatory or proprietary. Why shouldn't we conclude the district court was right to look at the remedies involved as more contractual in nature? That is, removing the benefit and damages, whether liquidated damages or in the form of back taxes. Why isn't that akin to making the city whole for breach of contract type of damages? I didn't quite understand the district court's rationale saying that they were akin to contract remedies when the remedies that we had cited in that brief were directly from the ordinance. These were not contract remedies. These were not from the financial agreement itself, which is a document that is required to be negotiated by the Long-Term Tax Exemption Law and by Jersey City Ordinance. I certainly remember the source of them is not in the contract, but that we're looking at the nature of them under the case law, right? Correct, correct. And in the financial agreement or ordinance, one of the remedies is a tax lien that the city can impose, which I don't believe is a contractual remedy that a private developer has available to it. Another is an In-Rim Foreclosure Act, in which, in Joint Appendix page 227, there's an excerpt from the financial agreement where a developer is required to agree, by virtue of executing the financial agreement, that these service charges, which constitute the payments in lieu of taxes. This is an alternative form of taxation, a tax abatement. And the developer is required to agree that the service charge has the legal equivalence of taxes. So there are tax remedies that are imposed that I think go beyond the scope of what a private developer can ever hope to accomplish by contract. Thank you. How about the, we actually should be ready to address the Labin case, Judge Easterbrook's opinion. What do you think of that? Thank you, Judge Chigares. I would love to address that case. I think it's very consistent with this Court's decision in Sage. I think what the Court struggled with in Labin was finding that there was really no proprietary interest when the State of Illinois, by statute, gave a subsidy to build ethanol plants. They didn't know anything at the beginning of the construction project, nor did they know anything at the end, yet the Court struggled and recognized that they had some skin in the game, if you will. And it's that financial participation that is the common theme in all of these cases, regardless of whether it's under NLRA preemption, starting with Boston Harbor, and then again in Sage, and any of the other cases that were in Dormant Commerce Clause jurisprudence. There has to be a degree of financial participation. And in Labin, it was that subsidy. Now, the balance of the Labin opinion is focused really on having accomplished market participant status. Did the State nonetheless exceed the scope or go beyond the narrow limits of its own interest? You don't get to that analysis in this case, in our opinion. We think that's one reason to reverse the District Court, because Jersey City is not a market participant. There is nothing about the tax abatement program in Jersey City that really evokes any of the financial participation that you see in any of the other cases that have found market participant status. There is no precedent for this. We would be making new law to find that a tax abatement in and of itself constitutes market participation. Now, on that note, regarding financial participation and the tax abatement process, I'd like to direct the Court's attention in the joint appendix. Page 57, the City more or less acknowledges that where there's a tax abatement, it is receiving 45 cents of every, I'm sorry, in conventional taxation, it is receiving 45 cents of every tax dollar that it collects. Under a tax abatement, it's collecting a dollar of every tax dollar that it collects. Joint appendix also, page 57, establishes that the City does not split any of these payments in lieu of taxes, pilot payments, doesn't split them with the county, doesn't split them with the school board, keeps them all to itself. A portion of the... But page 57, right? Page 57, Your Honor, yes. Joint appendix page 78 establishes that a portion of the developer's pilot payment is absorbed into the City's revenue stream and is actually used to offset current government expenses. Joint appendix page 60 provides an example of how this tax abatement program has actually worked in Jersey City on one specific project, and that project was called the Sugar House. But you don't need to resort to the specifics of this tax abatement project, right? I thought you were relying, as a matter of law, on Camps Newfound, that doesn't that, which surprisingly is not cited at all by the district court. Surprisingly, I would agree with that. I'm loaded for bear, Your Honor. I'm going on every different grounds to overturn this decision, reverse the district court's decision. Instead of citing the Camps Newfound, which we, of course, cited in our brief, the judge cited 2 Brayden v. Taxation with Representation, which was not an NLRA preemption case. It was not a dormant commerce clause case. It didn't contemplate the market participant, market regulator analysis whatsoever. It was a challenge to 501c3 tax exemption. Didn't those two district courts, I think your adversary cited, refuse to apply the tax abatements? I'm not certain of those district court cases. It was similar to what was done here, I think. It may be the Sixth Circuit in Snyder, but in that case, the court, although they referenced the tax abatements, the entire decision had to do with public construction projects. The statute went to public construction projects, and as a matter of fact, there's a quote from Snyder, which I probably don't have handy, my apologies, where the court says, this does not contemplate anything having to do with private construction projects. Is there anything you want us to follow SAGE up, obviously? Is there anything in SAGE that no longer holds, given what's the current state of what cities are doing to try to bring businesses and development into their areas? Judge Sirica, I don't think that anything needs to change. I think that SAGE just needs to be applied as it's written, and that requires that form of financial participation that I alluded to before. The SAGE two-part test specifically requires that there has to be a proprietary interest as an investor, as an owner, as a financier. Jersey City is none of these things. The city actually winds up, and I know you told me not to cite to the court, but Jersey City itself characterizes itself as cash positive on these tax abatement programs, and that's at joint appendix page 80. They acknowledge that in the vast majority of cases, they make more on a tax abatement than they make on conventional taxation. I think Judge Sirica's question is going to the practical realities that perhaps we need to recognize in at least the way we apply SAGE. When we look at the authorizing statute for these PLAs, 5238-1, that requires PLAs to serve the city's interest in efficient, quality, timely completion of large-scale projects. The PLA is here designed to accomplish that objective. Why shouldn't we view that as something narrowly tailored to a proprietary interest the city has in the optimal use of the foregone tax revenue, given the need for redevelopment? Thank you, Judge Kress. A couple of things. The statute that you cited is the public PLA statute that specifically contemplates participation in the project by the public. It's public ownership of more than $5 million. The municipality can opt to have a PLA. The ordinance that we're challenging here also has a component that addresses public instruction. We're not the fact of the matter is there are no tax revenues foregone. The city foregoes nothing. The city winds up cash positive in these situations, whereas maybe the county foregoes something, maybe the school district foregoes something. It's not the ordinance, and therefore it wouldn't be narrowly tailored to Jersey City's interest because it has zero skin in the game in these projects. Can you address with the limited time as my colleagues have more questions on this subject, the motion for leave to file the amended complaint? You opted in the reply not to address the criticism that was raised by Apolles that O'Shannock lacks standing because he's not even alleged to be an apprentice, or that there was a particular inability or bar from employment under the ordinance. What does adding him really add that would make this anything other than futile? Just the fact that he's resident of another state for privileges and immunities clause analysis, but to your point, we didn't choose to go forward with that. The essence of this case really is whether this ordinance is preempted under the NLRA or under the Dormant Commerce Clause, so we haven't moved forward with that. So you are waiving now the privileges and immunities issue? Yes. Okay. Okay, thank you, Counsel. We'll hear you on the phone. Good morning, Your Honor. My name is Sayur Estre, Assistant Corporation Counsel for the City of Jersey City. On behalf of the City of Jersey City, in my limited time, I would like to discuss specifically the interests of Jersey City. As discussed in our briefs, it's obvious that the city has an interest in redeveloping underutilized property. We have blighted areas, we have areas that have been deemed blighted, and we want to develop those areas. We also want to create jobs. With that, we try to incentivize these developers to come into the communities and build for tax abatement purposes, and we, in exchange, we offer them as tax abatement. Now, the city does have a stake in the game, and so what I mean by that is these buildings are being built in the City of Jersey City. If they don't, if the buildings aren't completed, it does turn on the city and becomes a problem for the city. So with that, we, that's why we have the project labor agreement. Isn't the interest you've just articulated, doesn't that just drive home that what we're looking at here is regulatory in nature, and that those are broad policy interests? Those are not proprietary interests in the sense of actually having a stake in the individual project, either as an owner or participant in some way in that project? No, Your Honor, and I do disagree. In regards to particular areas of the City of Jersey City, we do, we have specific interests to develop those areas. Why is that? Areas such as, for example, Journal Square, and I'm getting specific, I'm not sure if you're familiar with Jersey City at all, but areas such as Journal Square, developers don't want to develop in that area. They just don't. It's risky. The risks include not only the fact that they may not make any business, but the fact that they may not survive after the five-year or 20-year tax abatement is issued. And so I don't see that as, I don't see the city as a regulator in this case, and particularly because the project, I, the city believes that the project labor agreements are very project specific. They apply only to that particular project, excuse me, and after, and once that project is done, this developer can go and create across the street, and without the $25 million construction costs and the tax abatement, they can go ahead and develop whatever they want without signing on to union halls. And to, and also, Your Honor, I just want to make clear that in speaking about tax abatements, the city of Jersey City issues tax abatements without the PLA. The PLA only attaches when we are talking about $25 million, and the reason for that is because we're talking about very complex projects, projects that are over 10 floors, involve elevators. But according to the authorizing statute itself, in Section 5238, PLAs are only supposed to be issuing where it's at, it's project at the public expense. And the statute is, is defining public construction projects separately from tax abated projects, with public construction projects defined, consistent with Boston Harbor, as involving a contract entered into by the city using public funds. The issue here is not the use of tax abatements to further the very legitimate policy you've articulated. It's actually what seems to be exceeding the statutory authority of this ordinance, that is the authorizing ordinance, to impose PLAs on private parties engaging in private projects. How is that even permissible under the terms of Section 5238? Your Honor, in regards to the tax abatement, the city sees the tax abatement as a form of a subsidy, and that's where we agree with the District Court, where they cited to Reagan, stating that tax abatement functions as a subsidy that finances... But the Supreme Court has disagreed with that. What do we make of the fact that, that Kemp's case, which you found, was cited not only in the complaint, but three times in ABC's opposition to the motion to dismiss? And it's not cited once by the District Court. Doesn't that suggest this is just an oversight? The District Court is relying on an older Supreme Court case that was not even directly on point in terms of the Commerce Clause, and isn't making a single reference to a case that is on all fours, and more recently from the Supreme Court, that rejected the very arguments that are being raised now. Your Honor, I do recognize that Kemp, we found, was not addressed by the District Court. I'm not really sure what the, I guess the mindset of the District Court was in not addressing it. I do think that there are cases that do, that there are cases that do apply to the City of Jersey City, and that are more similar to the City of Jersey City. In regards to, the Court asked the City of Jersey City to review Burns. We find that Burns is very similar in the sense that the City of Jersey City invests as an investor, and I know that it seems like that's the disagreement. Your Honor, I do want to acknowledge, it seems like the disagreement is that the Court sees this as not as an investment, and the City sees this as a way of investing, just to make sure that I'm understanding your, your point. It's just that this particular way of investing has been characterized by the Supreme Court as not putting you in the profile that you should be in. I think that Kemp's new file, Kemp's new found, though, just focuses on the primal government action of the assessment of computation of taxes, where the City's, and in that case it singles out entities that serve New Jersey's interest for beneficial tax treatment, while penalizing out-of-state businesses. In this case, the City of Jersey City doesn't penalize out-of-state businesses, nor do we penalize out-of-state workers, in making the contrast between a contractor and then a subcontractor and workers that work under there. In this case, we're simply favoring the employment of 20 percent of the Jersey City residents whenever it's possible. We're not necessarily saying, no, New Jersey, I mean, if you're not from New Jersey, you can't work here, or you can't build here. Let me just ask, in terms of the actual merits issues, your colleague on the other side of the aisle has actually briefed the NLRA on preemption issues. You opted not to do that. Are you conceding, if we breach those, that you don't dispute the arguments that have been raised? Your Honor, I don't, I'm trying to understand specifically your question, because I thought that, I thought that it was briefed in the original documents, but nonetheless, in regards to the NLRA, Ma'am, can you please get behind the microphone? I'm sorry, it's just that I'm having a hard time hearing. Okay. In regards to the NLRA, the City does acknowledge that the federal, that preemption, preemption does exist. However, the City is arguing that we're a market participant, and so I thought that in addressing the fact that we were a market participant in the papers, we were agreeing that, yes, there is the NLRA, Section 7 and Section 8. However, we're particularly focused on the fact that the City is a market participant. Well, what if we disagree? Do we go on to reach any of the merits issues, at least the circumstances? If, I guess if the Court were to disagree with that finding, then I would focus on Lavin, particularly because in Lavin, the State of Illinois was found to not have any proprietary interest, but the Court found that there was a specific, that the, that you can still, you can still, I'm trying to find the term that, the phrase that was used in Boston Harbor, and I know my time is running out, that you can still work, or rather engage in commerce, but you're not necessarily a market regulator if your project is specific, if you're, the PLA specifically addressing the, I'm sorry, is a much more of a specific project. And that's where I would say, if Your Honor is saying, no, you don't have a proprietary interest, I'm saying, okay, then let's look at how specific, let's look at whether we're still acting as a regulator. I, I would say, Your Honor, that we're not, because at the end of the day, the City of Jersey City's PLA agreement only attaches to that particular, particular project. Okay. Thank you. Thank you, Your Honor. Connors. Good morning, Your Honors. Police to Court. Ray Heinemann for the Hudson County Building Trades. The Court asked the parties to specifically address Lavin and Byrne, both cases which we will discuss in a moment. In the case of Lavin and Byrne, the City of Jersey City has an independent basis to uphold the City's actions in addition to the market participant doctrine in SAGE. In Lavin and Byrne, the challenge conduct was not preempted under federal labor law simply because the State's actions were not the type of regulation Congress intended to preempt. The State actors in Lavin, Byrne, and the City of Jersey City have a financial interest at stake as a result of providing subsidies or tax abatements, and I would argue that one is just the flip side. One is a revenue stream up front. The other is foregoing a revenue stream. Does that mean there has to be a property interest? I think there has to be some interest, whether it's a property interest or it's a financial interest, but I agree, Your Honor, there has to be an interest. The State's actions cannot be completely divorced from its contractual relationship. It's either a procurement decision or foregoing revenue or granting revenue, as in Lavin. In all these cases, the State actors acted to enter into a very discreet section of the they were making. The State actors in all three cases acted specifically to protect the interest they had in either the subsidies or the monies they were granting or, in this case, the monies that were dealt with. Isn't that a stretch, though, from what we said in Sage? I don't think so, Your Honor. I think it is a movement, as Sage focuses on market participant and focuses on a move to protect the financial interest as an investor, as a financier. In this case, you still have that, I would argue, but in addition, the courts called attention to Byrne, which is a subsidy case, and Lavin, which is also a subsidy case, and those really extend out. They say, wait a minute, it's not required that you be a market participant under Boston Harbor. It's only required that you have an interest and that you're acting to protect that interest, not regulating the labor market generally, and that's what's happening here. Is he suggesting, even if those cases survive Chamber of Commerce versus Brown, which is really not clear given the Supreme Court's statement that states can choose to fund a program dedicated to advance certain permissible goals, but it's not permissible, nonetheless, for such policy to conflict with the NLRA. That really calls into question the continuing vitality of a case like Lavin. But even so, there's a fundamental difference, it seems from Supreme Court's case law, in the financial interest in a subsidy versus in a tax abatement, given the language of Kamp's Newfoundland. How do we take these circuit decisions that relate to subsidies and say that they somehow are overriding the plain language of Kamp's Newfoundland? I think Kamp Newfound, when you look at it, though, it is a pure tax exemption. It's not tied to anything else. It's a pure exemption to favor in-state charities. There's no other policy goal. There's no other interest attaching. The state of Maine was not trying to do something. They had no skin in the game. They gave their exemption. They were out. When you take a look at the Kentucky case, which I cited in my brief, Kentucky gives a tax exemption when you purchase Kentucky's bonds. The state Supreme Court found because Kentucky was using a tax exemption but was a market participant, they had skin in the game. They were acting as a private market participant, so the exemption that they were giving was not inherently regulatory. Well, ABC isn't challenging to the extent that the city is a participant, where it actually involves a public contract. But where it's private actors in a private project, aren't we in the realm of regulatory rather than market participant? I don't think so, Your Honor. What Jersey City is trying to do, instead of giving money up front, is trying to stabilize the tax situation of the developer. So they're giving a tax abatement. The developer knows what they'll owe. Jersey City is foregoing payments by other parties, so it's kind of acting as the state was in the engine manufacturer's case in California, is dictating other people's foregoing, because they're withholding monies from the school board, the county, other tax authorities that they're responsible for. So Jersey City is pulling all this back. They're taking a pilot stream. They're stabilizing the tax market. They're giving a method for the developer now to develop, and the intent of all this is twofold, I think. One is develop long-term tax revenues for the city, and in the short term, develop employment for its residents, both of which are permissible, both of which are good policy goals, but both of which are the skin in the game, to quote my adversary. That's what's important, and that's what differentiates what Jersey City was doing, what Pittsburgh was doing in Sage, from Camp Newfound, which is a pure tax exemption. And it's also more similar to what Kentucky was doing, I think it's Kentucky versus Mitchell, on the tax exemption issue. But public authorities don't grant, whether you call it a tax exemption or an abatement, they don't do it for no reason. They do it for broad economic or social policy reasons. That was the case to the charities in Camp Newfound, and you've articulated very laudable goals here, goals that could be served, it seems, through the use of tax abatements. But when there's this additional restriction that's being placed, we need to make a decision whether the interest at issue is a regulatory one, where broad social and economic policies seem to suggest we look at it in a more regulatory way, or it is as an investor, a financier, an actual contracting party in a particular project. Your Honor, I think you're missing, you're focusing on the whole idea of economic development and its broader scope. But narrowed down, the idea of tax abatements is to generate a future revenue stream. So by foregoing taxes today, they're collecting more taxes, hopefully, in the future. But why isn't that argument foreclosed by Camp's Newfound? Because Camp's Newfound is not future-oriented. There's no stake in the game. They're just providing a tax exemption for their local charities. There's nothing that they're getting back from it. They're not profiting in the future. They're not investing. They're not a financier. And they also weren't acting to protect anything. And I think that's the Laban case. I'm sorry, that's the Byrne case. If you're giving a subsidy, you're allowed to do something to protect it. As in Laban, you give a subsidy, you're allowed to do it, you're allowed to do something to protect it. You're not foreclosed from entering into a specific sphere that's directly tied to what you're trying to accomplish. And here, the PLA is very narrowly tailored to meet the needs of the city. The idea here is have the project done properly, have it completed timely, have it done quality, so that in 20 years we don't have empty hulking vehemence like some futuristic Batman movie or something. We have a vibrant city. That's what we're looking for. That's what Jersey City is trying to accomplish, Your Honor. And I suggest that there's nothing in Boston Harbor that forecloses them from trying to protect that long-term financial goal. Because if in a few years these tax abatements don't work, because the construction wasn't good, because construction overran, because of labor strife, if they don't work, Jersey City's out tax abatement money that they put into this. The Jersey City School Board, the County of Hudson, they're all done. Just like engine manufacturers, Jersey City is dictating a revenue stream, an income stream, how it's spent for other parties. They're all in the game. And Jersey City, I think, has to have the right, under Boston Harbor, to use the tool of our PLA to protect their investment. And that's what I think the case is about.  It's a future investment is what you're saying. It is future investment. Do you have an answer to the question I asked your colleague, how this ordinance is not ultra-various given the authorizing statute for PLAs? Absolutely, Your Honor. The state PLA statute authorizes PLAs on public construction projects. It flows following a case, George Harms and the other case escapes me, I apologize, that struck down PLAs in advance of the statute on certain grounds. The statute tried to directly address the concerns of the court in the George Harms and the other case was Torme cases. But the New Jersey Supreme Court cases in Harms and Torme did not eliminate PLAs in general, just the two specific PLAs at issue, which were on smaller projects and had some infirmities. So under New Jersey law, there still exists room for other types of PLAs. New Jersey has only authorized it for public construction. New Jersey statute does not, if you read the statute carefully, does not prohibit it in other statutes. Rather, I would argue that in other contexts outside of the statute, a PLA can be upheld only if it specifically follows the restrictions in Harms and Torme, and in this case it does. Any union can sign. Any contractor can participate. There are no restrictions on union, non-union contractors, union, non-union workers. Those were the criticisms leveled in the Harms and Torme cases which caused the state legislature to react in the authorizing statute. I think what's important is that the PLA in this case corresponds to what the legislature said, and it also corresponds to both Harms and Torme. So it is consistent with New Jersey law whether you look at the statute or you look at Harms and Torme. So it is not authorized. Thank you, counsel. Thank you. Thank you. Thank you, Your Honor. Just a few quick points. Despite your best efforts, we still have not heard an interest that would justify conferring market participant status. Excuse me. Could you pull up your slides? Better? If you twist it up a little bit, that would be best. That's a little better. Thank you. I can do it with your voice now. You too. I can project. You said despite their best efforts, and I didn't get that. Despite your best efforts, we still have not heard an interest that is sufficient to confer market participant status on the city of Jersey City and its tax abatement system. First, we heard from Ms. Zahir that there was an interest in urban redevelopment, but the United States Supreme Court in Kelo v. City of New London has already characterized economic development through urban redevelopment as a, quote, traditional and long-accepted function of government. In addition, Judge Sirica, in an opinion that you authored in Keystone Chapter of Associated Builders and Contractors v. Foley in 1994, this court has recognized that when a public body acts in pursuit of policy or general societal goals, its acts are regulatory, not as a market participant. We also heard from Mr. Heineman that it's the city's interest in a long-term revenue stream, the foregoing revenue that they could have today for tomorrow. The sage court addressed that head-on and held that an interest in a projected stream of increased tax revenue is an interest that is, quote, governmental, not proprietary, because it is not comparable to the financial interest that an ordinary market participant has in a project. Rather, the city's interest is simply the traditional government interest in enhanced revenue that applies any time the city seeks to increase its tax base. So neither of those is really a sufficient basis to confirm market participant status. The only other point that I would like to make is on the issue of government and machinist preemption. Yes, let me just jump in a second. Assuming we do not affirm, what are the issues we have to decide here today and what shouldn't we decide? I think what the court should decide is that dismissal of the complaint was erroneous under the 12b6 standard. I think the court should go further and address the district court's finding that Jersey City is a market participant and should, in contrast, should find that Jersey City is a market regulator. As such, the ordinance is subject to labor law preemption analysis, and on that point, under government and machinist, I don't think there is any need to remand. The ordinance on the face of the ordinance violates both government and machinist preemption policies insofar as it dictates to contractors who sign those PLAs what their collective bargaining agreements will be. It's not just signing the project labor agreement. But the district court hasn't had a chance to deal with that yet. The district court did not rule on government preemption, that's correct. So why not remand? I'm sorry, I didn't mean to cut you off. Because I think that on the face of the statute itself, it violates the law. I don't know that there needs to be any further facts taken on it. The ordinance itself says that you have to adopt the contract, you have to sign the PLA, and by signing the PLA, one of the terms is in addition to foregoing self-help remedies, in addition to foregoing collective bargaining, you've got to agree to adopt all applicable, all relevant documents. What that means is all of those Schedule A collective bargaining agreements of the various trades that participate in the PLA. So in essence, a contractor signing off on that PLA is getting the negotiated terms already. But of course, you don't have the benefit of briefing of that issue on the other side. That's correct. That was not briefed by... And we need to remand anyway, I take it, even with the relief you're seeking as to RIFS and Commerce Clause claims. To the extent that it's not moved by virtue of the Court's finding that Jersey City is a market regulator and this violates NLRA preemption. When you were asking us to reverse the dismissal, there were a number of other claims, including the New Jersey Constitution, due process, Equal Protection, Section 1983. You have not briefed and therefore seem not to have appealed the dismissal of those. You're not suggesting that those would be revived even if we agreed with your view of the market participant issue? That's correct. I think it's only counts two and counts three. It's the NLRA preemption issue. It's the Dormant Commerce Clause issue. It is the ERISA preemption issue, all of which were not decided, premised upon the Court's finding that Jersey City was a market participant, which we think is clearly erroneous. Okay. Thank you, Counsel. Thank you. We thank Counsel for the excellent arguments, both oral and written.